UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DUNG QUOC PHAM** | **CIVIL ACTION NO.**_____ |
| **Versus** | **JUDGE:** _____ |
| **UNIVERSITY OF LOUISIANA AT MONROE,** | **MAGISTRATE JUDGE:** _____ |
| **DEAN BENNY BLAYLOCK,** | |
| **DR. KEITH JACKSON,** | |
| **DR. TIBB JACOBS,** | |
| **DR. MICHAEL COCKERHAM,** | |
| **DR. KHALID EL SAYED,  V.P. ERIC A. PANI AND** | |
| **SHERRYE CARRADINE, INDIVIDUALLY AND** | |
| **IN THEIR OFFICIAL CAPACITIES AS UNIVERSITY** | |
| **ADMINISTRATORS ACTING ON BEHALF OF THE** | |
| **SCHOOL OF PHARMACY BOARD OF ETHICS** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION**

NOW INTO COURT, comes Dung Quoc Pham, (hereinafter "Pham" or "the student") a single man and resident of Monroe, Ouachita Parish, Louisiana, whose mailing address is 1418 North 18th Street, Monroe, Louisiana 71201, who hereby appears and states the following as grounds for the subject Complaint:

1.

Jurisdiction is founded herein pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 affording supplemental jurisdiction over Plaintiff's claims arising under Louisiana law.  Venue is proper within this judicial district as the majority or all of acts complained of herein occurred within this judicial district.

2.

Named defendants identified infra, are justly and truly indebted unto Plaintiff for all sums as are reasonable under the premises, punitive damages as allowed by law as to the individual defendants, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief afforded to Plaintiff at law or in equity, including injunctive and/or declaratory relief:

Dean Benny Blaylock, individually and in his official capacity as Dean of the College of Pharmacy, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Dr. Keith Jackson, individually and in his official capacity as Faculty Chairperson of the Board of Ethics of the College of Pharmacy, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Dr. Tibb Jacobs, individually and in her official capacity as Faculty Chairperson of the Board of Ethics of the College of Pharmacy, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Dr. Michael Cockerham, individually and in his official capacity as Associate Dean for Academic Affairs of the College of Pharmacy, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Dr. Khalid El Sayed, individually and in his official capacity as Professor of the College of Pharmacy, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Eric A. Pani, individually and in his official capacity as Vice President for Academic Affairs, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana; and,

Sherrye Carradine, individually and in her official capacity as In-House Counsel, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana.

3.

Plaintiff (hereinafter sometimes as "Pham"), is a third-year student at the University of Louisiana at Monroe College of Pharmacy.  Plaintiff has obtained 90 credit hours towards a professional doctorate degree in Pharmacy which requires a total of 159 credit hours.

Pham has taken out student loans and paid tuition to date to the School of Pharmacy in excess of $100,000. Until the incidents which are the subject of this Complaint, Plaintiff has at all times remained a student in good standing with the University of Louisiana at Monroe and School of Pharmacy and has never been sanctioned or disciplined in any way.

## I. TEMPORARY RESTRAINING ORDER

Pursuant to LR 65.1, the application for a Temporary Restraining Order is filed separately herein these proceedings. Some of the subject matter therein is referenced herein as it relates to damages and relief to which Plaintiff is entitled to on the principal Complaint and Request for Permanent Injunction.

4.

On Monday, April 4, 2016, Pham was called out of class and escorted by police officers who physically removed him from the campus at the University of Louisiana at Monroe School of Pharmacy.[1] As will be shown herein, the Pharmacy School (hereinafter "School") acting through the Board of Ethics for the ULM School of Pharmacy (hereinafter "Board") has repeatedly violated numerous Rules of the Pharmacy Code of Ethical and Professional Conduct (hereinafter "Rules"), in these student/disciplinary proceedings, in breach of contract between the University and the student, and in violation of Pham's federally protected constitutional right to due process, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

---

1. The School's actions were unwarranted and completely uncalled for. V.P. Eric Pani upheld the Board's recommendation of expulsion by letter of April 1, 2016 and stated that the letter would be sent to Dean Blaylock for his further action. Undersigned counsel emailed V.P. Pani about Pham attending classes and taking examinations until he was notified by Dean Blaylock, and V.P. Pani did not respond. Monday morning, police officers physically removed Pham from the Pharmacy School building in front of his fellow students, and instructors. Dean Blaylock and V.P. Pani acted to inflict as much embarrassment as possible upon Pham, a pattern which will be shown at trial on the merits of the permanent injunction and §1983 action for damages sustained for the University's violation of Pham's constitutional rights.

5.

The actions of the Board/School/University have caused and are causing Pham irreparable harm which can only be addressed adequately by this Court by the issuance of an immediate Temporary Restraining Order pending a hearing on a Preliminary and Permanent Injunction.  Pham has at least two examinations scheduled for this week, and any time elapsed while Pham remains expelled from the School will cause him great damage in the pursuit of his Pharmacy degree, not to mention the significant mental anguish, embarrassment, humiliation and compensatory damages which the Courts typically have recognized in student expulsion cases.

6.

The Courts have well established that a student has a constitutionally protected liberty interest in the furtherance of his/her education, and that federal due process constraints govern the Universities (taxpayer supported "State" institutions such as ULM, or private) in conducting student disciplinary/expulsion proceedings.  In this particular case, the School has repeatedly violated its own Rules in dispensing the sanction of expulsion for Pham, which violates Pham's constitutional due process rights to a fair proceeding, and warrants this Court's immediate intervention until the trial of this case for all damages sustained by Pham, under a §1983 claim against the University, as a tax-payer supported educational institution.

## COUNT I.

### 7.

On March 19, 2015 Dr. Michael Cockerham sent written notice to Pham that Professors Khalid El Sayed and Adam Pate had submitted written accusations[2] regarding Pham alleging academic dishonesty in violation of Rules 3.01.01, 02 and 03, "that occurred during the administration of an Infectious Disease (sic) on Thursday, March 12, 2015".[3]  (Rule 10.02).

### 8.

On or about March 24, 2015, the Plaintiff submitted to Dr. Jackson's office secretary, a written notice requesting a hearing in accordance with Rule 7.01 and 10.03.

### 9.

On April 2, 2015 the Board of Ethics committee conducted the initial disciplinary hearing against Pham, who was not represented by legal counsel and pled not guilty.  According to the hearing minutes (a one-page document which is the only documentation in Pham's student

---

2.  Pham requested access to his entire student file.  The Dean's Office is charged with the obligation "to record the minutes of all regular and special meetings held by the Board" (Rule 5.03.03) and "summary minutes of the proceedings shall be kept in the Office of the Dean and made available to the accused student upon request" (Rule 11.10); "to maintain confidential files regarding violations of the Code and all records concerning the findings and recommendations of the Board Hearing Committee" (Rule 6.04).  The defendants' response to Pham's record request was reluctantly, to produce a one-page minute summary of the April 2, 2015 disciplinary hearing.  Therefore, Pham only knew that Professors El Sayed and Pate had accused him of cheating prior to the disciplinary hearing, but had no advance notice of the specific allegations.  Also, because the defendants are unwilling or unable to produce the initial written charges filed by Professors El Sayed and Pate, Pham is unable to determine if other procedural rules have been violated, or even whether the written charges exist.

3.  The failure of the defendants to produce any documents other than the summary minutes of the April 2, 2015 disciplinary hearing is particularly troubling because of the critical timelines of the disciplinary proceedings, and *because the Infectious Disease examination was taken by the Plaintiff on March 5, 2015, not March 12, 2015 as Dr. Cockerham's letter states, or April 1, 2015 as Dean Blaylock's letter states.*

file, and Dean's file) the Board found Pham guilty of cheating based upon the testimony of Professor El Sayed and Professor Adam Pate, and "Exam Soft records".    The Board recommended the sanction of Pham receiving a zero grade for the examination and probation for the duration of his tenure in the Pharmacy School.

10.

On April 7, 2015 Dr. Keith Jackson, Faculty Chairperson of the Ethics Committee sent a letter to the Pham, pursuant to Rule 11.11, informing him that the Board found him guilty by a preponderance of the evidence for "giving unauthorized assistance to a fellow student on an exam and receiving unauthorized assistance"

11.

Subsequently and during the delay period within which to file an appeal of the Board's decision, Professor Dr. Khalid El Sayed met with Pham.  During this meeting, Dr. Sayed told Pham that he needed to write a letter to Dean Blaylock admitting to the charges brought by Dr. Sayed, apologizing and begging for mercy from the Board and Dean Blaylock while the sanction was to be determined.

12.

On April 9, 2015, Pham followed the advice of Dr. Sayed and sent a letter to Dean Blaylock.  Significantly, despite the coercion of Dr. Sayed, Pham could not bring himself to admit to the charge of cheating on the examination.  Rather, the Pham stated, "I regret my entire actions and do apologize for my misconduct…. I swear that I will never put myself in this situation again and be of good conduct throughout my stay in school and the rest of my career… I pray that this letter has moved The Office of the Dean to favor a finding different from the

Board. Finally, I pray for mercy and would be very grateful if my request is granted". Within this letter, Pham notified the Dean of his intent to appeal the Board's decision pursuant to Rule 14.02.

13.

Simultaneously, on April 9, 2015, Pham wrote a letter to Dean Blaylock and Dr. Jackson, intending to show grounds for an appeal pursuant to Rule 14.02.02 on the basis that new evidence had been secured. In this letter, Pham emphatically declared, "As stated in front of the Board I am not guilty of this charge". Pham attempted to offer evidence of his anxiety disorder for which he was under the care of health care provider, Sheryl Kimberly Gore, MSN, FNP-BC; evidence of his poor eyesight as attested to by his eye doctor; and questioned the basis of the Board's findings which was premised upon Exam Soft records, which supposedly indicated that some of the accused's answers conincided.

14.

On April 15, 2015, Dean Blaylock gave Pham written notice that his Office would uphold the Board's findings and recommendations as to sanctions, claiming that the transgression had occurred during an April 1, 2015 examination. According to Rule 6.06 and 14.02 the Dean is supposed to hear the appeal. Instead, Dean Blaylock upheld the Board's decision and recommendation without any analysis whatsoever of the issues raised in Pham's appeal letter of April 9, 2015, and simply endorsed the Board's decision.

15.

Pursuant to Rule 14.07, on April 15, 2015, Pham appealed to Vice-President of Academic Affairs, Eric A. Pani.  Pham reasserted the claims he made in the appeal to Dean Blaylock, that he did not cheat on the examination, and also presented the documentation as to his anxiety disorder and poor eyesight.

16.

About this time, Pham realized that he had been duped.  On May 7, 2015 he wrote a letter to V.P. Pani explaining that he had written the previous April 9, 2015 letter to Dean Blaylock and Dr. Jackson upon the advice of Dr. Sayed, *his original accuser.  Pham retracted his statements made therein, and explained that he was under duress and was "unaware that this would affect my appeal".*  Pham also stated, *"I now understand that this was a misguided attempt and hope that you will take the circumstances around the writing of this letter into consideration and disregard it so that my appeal may go forward".*

17.

By email on May 16, 2015 V.P. Pani denied Pham's appeal specifically on the basis that, "I find no grounds for an appeal since you admitted the misconduct in your Appeal to Dean Blaylock".  Pham did not admit to cheating, and therefore V.P. had no basis for refusing to consider Pham's appeal.  Furthermore, V.P. Pani failed to consider the violation of due process which had already occurred; namely, the improper influence on Pham exerted by his accuser, Professor El Sayed, to write an apologetic letter to Dean Blaylock during Pham's pending appeal.

18.

At all times pertinent hereto, defendants were "persons acting under color" of authority within the meaning and intent of 42 U.S.C. §1983, as disciplinary actions taken by public university officials against students clearly involve requisite state action, and clearly invoke rights secured by the Constitution of the United States under the Fifth and Fourteenth Amendments to due process of law when life, liberty and property interests are at stake. Pursuit of a graduate/professional degree is universally recognized as a constitutionally protected liberty/property interest when disciplinary proceedings against a student, especially expulsion, are involved.

19.

In particular but without limitation, the actions of Dr. Khalid El Sayed in advising Pham to admit to the charges *he* initially brought against Pham; the failure of the Office of the Dean to maintain, and the Office of the Dean and In-House Counsel to give Pham access to, all records of the disciplinary proceedings; the failure of Vice-President of Academic Affairs to consider the merits of Pham's appeal, but rather, to simply deny the appeal upon the basis of a letter which the accuser coerced Pham to write in the first place, but which in no event admitted to *cheating;* and otherwise, the failure of the University of Louisiana at Monroe and School of Pharmacy to adhere to the rules and procedures promulgated in the University of Louisiana at Monroe School of Pharmacy Code of Ethical and Professional Conduct all are in violation of Pham's constitutional right to due process and/or in violation of State law for breach of contract.

## COUNT II.

20.

On November 12, 2015 Dr. Michael Cockerham sent written notice to Pham that Dr. Courtney Robertson had submitted written accusations[5] regarding allegations of academic dishonesty in violation of Rules 3.01.01 "that occurred during the Integrated Lab Course on Thursday, November 5, 2015".

21.

On November 16, 2015, undersigned counsel for Pham provided written notice (hand-delivered by Pham) to Dr. Tibb Jacobs, Chair of the Board of Ethical and Professional Conduct and Dr. Michael Cockerham, Associate Dean for Academic Affairs, of Pham's denial of the charges and a request for a formal hearing pursuant to Rules 7.01 and 10.03. In that letter, undersigned counsel states:

> Of course, I intend to cross examine any witnesses testifying in the prosecution of this case, and therefore request permission to do so pursuant to Rule 11.03. In light of prior circumstances where my client was advised by a faculty member who actually brought previous charges against my client, and a letter he wrote pending his appeal pursuant to that advice upon which the Board based the denial of my client's appeal, as well as my client's need for proper representation due to language barriers, I submit that this request is an entirely fair and reasonable accommodation.

---

5. The written accusation stated, "The professor witnessed the use of unauthorized materials during the course of a graded exercise". As the testimony at the hearings showed, this accusation is demonstrably false. Dr. Robertson certainly did not establish with her testimony that she witnessed Pham "using" any materials, nor was it "during the course of a graded exercise". Rather, Dr. Robertson saw Pham holding study notes in plain sight in one hand while he signed his name on the examination with the other hand, after time was called for the exam and the students were no longer at the test stations. Pham was on his way out the door. Significantly, V.P. Pani changes the charge in his final decision to uphold the Board's findings and recommendation of expulsion in his letter of April 1, 2016. In that letter, V.P. Pani states that "you simultaneously *possessed* unauthorized materials and the graded [exercise's] answer sheet, violating Rule 3.01.01 of the ULM School of Pharmacy Code of Ethical and Professional Conduct". Thus, V.P. Pani finds Pham guilty of something with which he was not even charged. This has been the pattern of the School/Board in these disciplinary proceedings. They make up the rules as they go without regard to the constitutional due process rights of the student.

22.

Dr. Cockerham responded by letter of November 17, 2015 wherein he stated:

You may be present during the hearing to serve as an advisor to Mr. Pham, but you will not be permitted to speak at or participate in the proceedings. *Of course, Mr. Pham will be offered the opportunity to present evidence and question witnesses.*

23.

Despite Rule 10.05 which requires the hearing to be scheduled within ten (10) days of the request, the defendants scheduled the formal hearing for December 14, 2015 at 1:00 p.m..

24.

At the hearing, after Dr. Robertson testified, Pham attempted to ask her questions. Faculty Chairperson Tibb Jacobs, who was video-conferenced on a monitor, told Pham that he was not allowed to ask any questions. Pham, of course, was confused because he had been promised the opportunity to ask witnesses questions, and he attempted again to ask Dr. Robertson questions. Again, Dr. Tibb Jacobs as well as Dr. Cockerham, did not allow Pham to ask Dr. Robertson any questions.

25.

Following Dr. Robertson's testimony, after Dr. Roxie Stewart testified, Pham attempted to ask her questions. Faculty Chairperson Tibb Jacobs and Dr. Cockerham told Pham that he was not allowed to ask Dr. Stewart any questions.

26.

Following Dr. Stewart's testimony, after graduate assistant Sweilem Al Rihani testified, Pham attempted to ask him questions. Faculty Chairperson Tibb Jacobs told Pham that he was not allowed to ask Mr. Al Rihani any questions.

27.

Rule 11.04 states: "Either party before the board may call witnesses and question any witness".    The Pharmacy Boards' denial of Pham's right to question its witnesses is a blatant violation of its own rules, and even its written promise to Pham prior to the hearing. Pham relied upon Dr. Cockerham's written promise and Rule 11.04 to prepare his case.  Because *no one*, including the Board's witnesses, actually saw Pham with any extraneous materials during the test examination, it was critical to Pham's presentation of his case to cross-examine the Board's witnesses.  He had prepared over fifty questions for each witness, and printed the questions in large, bold font on copy paper to show the witnesses as he asked the questions.  The Board's breach of its promise and its Rules was arbitrary and capricious, and displays bad faith on their part in violation of Pham's constitutional right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, subjecting them to the sanctions of punitive damages, attorneys fees and costs as provided in 42 U.S.C. §1988.

28.

Immediately after the hearing was adjourned, Dr. Cockerham asked that Pham and undersigned counsel leave the room for the Board's deliberation, but stated that the Board could recall Pham for additional questioning.  Undersigned counsel asked Dr. Cockerham if a copy of the recorded hearing would be available and Dr. Cockerham said that a CD copy would be provided to Pham.  The Board did not recall Pham for any questions, the hearing was terminated and Pham and undersigned counsel left the building.

29.

On December 16, 2015, Dean Benny L. Blaylock wrote Pham that he agreed with the Board's findings and recommended sanction of expulsion.  Despite Rule 11.11 requiring that

"the Faculty chairperson will report the findings (of the Board following the hearing) in writing to the (a) accused student....." Pham did not receive any written findings of facts and conclusions of the Board. The only notification following the December 14, 2015 hearing Pham received was the December 16, 2016 letter from Dean Blaylock.

30.

Nonetheless, due to Rule time constraints, undersigned counsel provided Dean Blaylock with a notice of intent to appeal letter pursuant to Rules 14.02, 14.02.03.02 and 14.02.03.03, without the opportunity to review the findings of fact and conclusions of the Board or the recording of the formal hearing. In this letter, it was called to Dean Blaylock's attention that neither the Board's written findings of facts and conclusions (Rule 11.11), nor a copy of the recorded December 14, 2015 hearing had been provided (Rule 11.10). Undersigned counsel stressed that examination of both were essential for the preparation of Pham's appeal.

31.

As troubling as the Board's deviation from, and disregard of, its own Rules setting forth disciplinary procedures, perhaps more troubling was the substantive content of Dean Blaylock's letter. Dean Blaylock stated: "Based on these findings and prior actions of the Board, I concur with the decision of the Board". Therefore, Dean Blaylock had reviewed findings of the Board which had not been provided to Pham as required by Rule 11.11. Also, Dean Blaylock had considered "prior actions of the Board" in reaching his conclusion, indicating that he had considered evidence extraneous to the formal hearing. Finally, by already expressing his approval of the Board's findings and recommendations as to sanctions, Dean Blaylock displayed an alarming lack of impartiality and independent judgment regarding Pham's appeal, in violation of Pham's right to a fair, unbiased, impartial appeal. The Board's disregard of its

own procedures invalidates the December 14, 2015 hearing and Dean Blaylock's letter of December 16, 2015 shows that Pham's appeal was a mere "fait accompli".

32.

On January 4, 2016, undersigned counsel hand-delivered a letter to Dean Blaylock noting numerous violations of the Board's rules in the disciplinary proceedings against Pham. On January 4, 2016, Dean Blaylock emailed Pham a letter indicating that he found Pham "was justified in [his] claim", and would grant a "second, abbreviated hearing". None of the other concerns undersigned counsel expressed in the January 4, 2016 letter were addressed. For some reason, after delaying the hearing in violation of Board Rules, and while knowing that Pham had not been provided with either the transcript/recording of the December 14, 2015 hearing or the written findings of facts and conclusions of the Board, it was now imperative according to Dean Blaylock "that this hearing occur as soon as possible".    Nonetheless, undersigned counsel wrote Dr. Cockerham January 7, 2016 reiterating the need for the transcript/recording and the Board's written findings.    After many repeated efforts by undersigned counsel, these were finally provided on January 12, 2016 and the supplemental hearing was scheduled for January 21, 2016.

33.

After reviewing the Board's written findings of facts and conclusions as well as the audio recording of the December 14, 2015 hearing, undersigned counsel wrote and hand-delivered a letter to Dr. Cockerham on January 19, 2016, because of yet another alarming instance of the Board operating outside, and in violation of, its own Rules.

14

34.

A determining factor in the Board's decision to expel Pham was its consideration of evidence which was not presented at the hearing, but only viewed by the Board during its deliberations. Dr. Robertson purportedly produced "Mr. Pham's paper" (which was presumably the answer sheet for the November 5, 2015 Check-Tech examination) after the hearing was adjourned. Because the document was not produced at the hearing subject to Pham's inspection and authentication, it was not properly presented as evidence and should not have been considered by the Board during its deliberations. This is a clear violation of Rules 7.01.06, 12.06.01 and 12.06.05.

35.

Subject to undersigned counsel's objection to the presentation of this extraneous evidence "behind closed doors", for the purposes of Pham's appeal, immediate production of this document for inspection was requested in order to prepare for the supplemental hearing Dean Blaylock had scheduled for Thursday, January 21, and for Pham's appeal of the Board's actions.

36.

On January 19, 2016, undersigned counsel again requested that Dr. Jacobs grant permission to cross-examine the witnesses on Pham's behalf at the January 21, 2016 hearing. In support of the request pursuant to Rule 11.03, the following facts and observations for Dr. Cockerham's / Dr. Jacob's consideration were submitted:

> *(1) At the December 14, 2015 disciplinary hearing, both you [Dr. Cockerham] and Dr. Jacobs forbade Mr. Pham from cross-examining the prosecution witnesses, despite your written promise to me that Mr. Pham would be able to cross-examine witnesses and Rule 11.04.*

(2) *This damage cannot be fully undone. Contemporaneous cross-examination of witnesses is essential to establish the reliability of testimony, bias, inter alia. There are many examples of misleading statements made by the prosecution witnesses which were perhaps not malicious or intentional, but nonetheless were not able to be clarified by Pham's cross-examination. Consider but one of many examples: Dr. Robertson stated that Pham was "unable to answer" her both when she first confronted Pham, and later when she asked Pham why he would be concerned if she reported the incident if he had done nothing wrong. Both Dr. Robertson, Dr. Stewart and the Board found this to be "evidence" of guilt. However, and despite that it is axiomatic in American jurisprudence that silence cannot be used against the accused in the determination of guilt (a principle which is even embodied in Rule 13.02), Pham was not able to question Dr. Robertson on whether or not she gave him the opportunity to explain to her what had transpired. Dr. Robertson immediately accused Pham of cheating when she saw him with papers after the examination. Then, she told Pham that she could not discuss the matter with him at that time. This is extremely significant, language barriers notwithstanding. It was important for Pham to be able to ask Dr. Robertson what she meant when she said Pham was "unable to answer". If you or I were accused of cheating before given an opportunity to explain and then told the matter could not be discussed, I suppose you or I would be "unable to answer" as well.*

(3) *The supplemental hearing granted by Dean Blaylock is "abbrieviated" and Pham will only be allowed twenty minutes to cross-examine the prosecution's three witnesses, as you state in your January 12, 2016 letter to me, although through no fault on the part of Mr. Pham. Why should Pham be penalized because of the Board's violation of the Rules which govern their disciplinary proceedings?*

(4) *After the hearing of December 14, 2015 was adjourned, Dr. Robertson produced "Mr. Pham's paper", which she purported to be Pham's answer sheet from the November 5, 2015 Check-Tech examination. Because the document was not presented as evidence during the hearing, Pham was not allowed to inspect this document or to verify its authenticity. Such extraneous evidence is not proper for the Board to consider during its deliberations according to student disciplinary jurisprudence and Rules 7.01.06, 12.06.01 and 12.06.05.*

(5) *The Board clearly found that this document was significant, if not dispositive of Pham's guilt. Pham hasn't even seen it. It must be produced for Pham's inspection immediately, in order for Pham to prepare for the supplemental hearing on January 21, 2016.*

(6) *It is going to be exceedingly difficult for Pham to change any of the eight Board members' minds given the present situation. They have already voted him guilty (and the Dean to whom Pham is supposed to appeal has already expressed his written approval of the Board's determination). Yet, the prosecution's witnesses were allowed to go unchallenged by Pham. Even the prosecution's testimony is*

*mischaracterized by the Board in its written findings of facts and conclusions. Again, but one example is the Board's statement that Teacher's Assistant Al Rihani Sweilem testified that "Pham got mixed up" during the Check-Tech examination. This is not by any stretch what Mr. Sweilem testified or what happened. It was not Pham that went out of order from station to station, but another student. Sweilem asked Pham to wait until the other confused student finished the station. Pham did not cause Sweilem's confusion. Then Sweilem answered a leading question from a Board member and concluded that "it was possible that a person could have retrieved something during the confusion". This mischaracterization of even the direct testimony of the prosecution's witnesses is but one example of the bias which presently confronts Pham. Yet no witnesses saw Pham with the paper "during the examination" before Dr. Robertson had called time. Is this the kind of evidence that the Board depends upon to expel its Pharmacy students, i.e., preconceived opinions of guilt unchecked by cross-examination, mischaracterizations of testimony, and speculation that "a person could have done something" during a moment of confusion of a Teacher's Assistant?*

*The Rules provide Dr. Jacobs the authority to grant me permission to cross-examine the prosecution witnesses (Rule 11.03). If there were ever a situation where permission should be granted, this is it. An abbreviated hearing where Pham has twenty minutes to attempt to undo the damage which has been done to his right to a fair proceeding is not enough. Rules governing disciplinary proceedings should be designed to protect an individual's fundamental right to due process and find out the truth. To date, the purpose of these Rules has been undermined by the Board's alarming disregard for those very Rules.*

*By requesting permission once again to cross-examine the prosecution's witnesses, I am affording the Pharmacy School an opportunity to demonstrate good faith in making some effort to mitigate the significant damage which has already been done to my client. In my estimation, that is not too much to ask for a third-year student who faces expulsion in disciplinary proceedings where numerous Rules have been violated already by the Board, and the student's due process is at stake. I urge you to reconsider your position, and I request the production of Pham's answer sheet for the November 5, 2015 exam immediately.*

37.

Following the January 21, 2016 hearing, Dean Blaylock sent a letter dated January 23, 2016 where yet again, he simply approved the Board's findings and recommendations, disregarding his duties pursuant to Rules 14.02, 14.05 and sending Pham on

his way to V.P. Pani for final action. Incredibly, once again the Board issued no written findings of facts and conclusions after the January 21, 2016 supplemental hearing required by Rule 11.11. Basically, it is not unfair to characterize these proceedings to date as nothing more than a sham. A violation of Board Rules is a breach of contract between the University and the student. Quantitatively and qualitatively, the Board's violation of Rules in this case is a violation of due process.[6]

38.

The School/Board blatantly and repeatedly violated at least the following of its own Rules:

(1) Rule 10.05 (Count II);

(2) Rule 11.10 (inordinately delayed production of the minutes/record of the proceedings (Count II) and never provided for the March/April, 2015 proceedings) (Count I);

(3) Rule 11.11 (violated in each proceeding, Counts I, II);

(4) Rule 11.04 (Dr. Cockerham and Dr. Jacobs prohibited Mr. Pham from cross-examining witnesses at the December 14, 2015 hearing in violation of Rule 11.04 and Dr. Cockerham's and Dr. Jacobs' written promise) (Count II);

(5) Rules 7.01.06, 12.06.01 and 12.06.05 (only after undersigned counsel demanded and finally received the Board's written findings of facts and conclusions from Dr. Cockerham on January 12, 2016, was it discovered that the Board examined and deliberated over evidence not properly introduced at the December 14, 2015 Board disciplinary hearing) (Count II);

(6) Rules 14.02, 14.05 (Dean Blaylock has not considered and reviewed the appeal as required, but simply approved whatever the Board decided. That is not any meaningful appeal) (Counts I,II).

---

6. An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, *74 S.Ct. 499, 98 L.Ed. 681 (1954)*. In *Tedeschi v. Wagner College, 49 N.Y.2d 652, 661, 404 N.E.2d 1302, 1306, 427 N.Y.S.2d 760, 765*, the court held: "Whether by analogy to the law of associations, on the basis of a supposed contract between university and student, or simply as a matter of essential fairness in the somewhat one-sided relationship between the institution and the individual, we hold that when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed".

(7) Rule 13.02 (Count II).[7]

39.

On February 5, 2016, V.P. Pani sent Pham the following email:

I have received your letter dated February 1, 2016 in which you are appealing the decision by the ULM School of Pharmacy Board of Ethical Conduct's decision recommending your expulsion from the PharmD program. I am assembling information pertinent to this matter and request that you send me, before February 12th, **anything you feel is relevant**. After I have time to review the material you and Dean Blaylock provide me, I may request that we meet and will notify you if that is the case.

A letter to this effect dated today will be sent to you through the US mail.

40.

On February 11, 2016, undersigned counsel hand-delivered the appeal document attached hereto as Exhibit 1.  V.P. Pani then sent undersigned counsel an email stating that he would not consider the letter and would return it because it was not submitted by Pham.  Pham immediately emailed V.P. Pani stating that he felt the document was relevant, had reviewed and approved of the document, signed and dated it, and hand-delivered it to V.P. Pani, instructing V.P. Pani to consider it in accordance with his correspondence of February 5, 2016.

41.

Six weeks passed.  On March 24, 2016 V.P. Pani sent Pham a bizarre letter, purporting to provide Pham an option of having Dean Blaylock or V.P. Pani review his appeal (See attached

---

7.  The "University of Louisiana at Monroe School of Pharmacy Code of Ethical and Professional Conduct", is posted on the School's website   www.ulm.edu/pharmacy/documents/ospa/codeofconduct.pdf.   It is unquestionably a contract between the University and the student.  Contrary to the position taken by the defendants herein, the contract is not a one-way pledge of the student, but a reciprocal set of obligations imposed upon both the student and the Board, Faculty and University Administrators.  A failure of the University and its faculty to adhere to its own rules, is in itself a violation of Pham's constitutional right to due process, as in this case, where the Board/School's arbitrary and capricious disregard of its own rules denied Pham the opportunity for a fair disciplinary proceeding.  The sheer multitude of violation of rules by the Board/School is staggering, but the qualitative nature of the violations severely undermined Pham's due process rights as set forth herein.  Pham requests that this Court take judicial notice of the "Code" or "Rules" as referenced and incorporated herein.

Ex. Pani, 3/24/16). Undersigned counsel's response thereto is attached as "Ex. C. Wirtz to Pani, 3/25/16".

42.

On April 1, 2016, V.P. Pani upheld the Board's decision to expel Pham from School. (Ex.Pani, 4/1/16). Significantly, V.P. Pani changed the charge in his final decision to uphold the Board's findings and recommendation of expulsion. V.P. Pani states that "you simultaneously **possessed** unauthorized materials and the graded [exercise's] answer sheet, violating Rule 3.01.01 of the ULM School of Pharmacy Code of Ethical and Professional Conduct". Thus, V.P. Pani found Pham guilty of something with which he was not even charged.

43.

Pham shows that the defendants acted in deliberate and/or wanton indifference to the Rules of disciplinary procedure promulgated by the Pharmacy School, University of Louisiana at Monroe, in an arbitrary and capricious manner, and therefore to Pham's clearly established and federally protected constitutional rights and are thus liable unto Plaintiff for punitive damages pursuant to 42 U.S.C. §1983 and attorneys fees under 42 U.S.C. §1988.

44.

The defendants' actions or omissions have caused Pham damage to his reputation and standing within the school and community, severe emotional distress and mental anguish, humiliation and embarrassment, as well as pecuniary damages pertaining directly to the sanctions imposed by the Board as will be more fully shown at trial.

20

45.

Pham is entitled to and desires an award of attorney's fees pursuant to 42 U.S.C. §1988 for the violation of his federally protected constitutional rights.

46.

Pham is entitled to and desires an award of all such other relief to which he is entitled at law or equity, including injunctive and/or equitable relief.

47.

Plaintiff is entitled to, and reserves his right to, trial by jury of this matter on the issue of damages.

**WHERFORE,** Plaintiff Dung Quoc Pham prays for an immediate Temporary Restraining Order against the defendants under Rule 65 of the FRCP, due to the immediate and irreparable injury inflicted upon Pham by the defendants in expelling him from School without due process, pending a hearing on a preliminary and permanent injunction after required notice is provided to the defendants and due proceedings; trial by jury and after due proceedings are had that there be judgment in his favor and against defendants, The University of Louisiana at Monroe, and all remaining defendants individually and in their official capacity, for all sums as are reasonable under the premises, punitive damages as to the individual defendants as allowed by law, all costs of these proceedings, attorney's fees, legal interest thereon from the date of judicial demand until paid, and all such other relief to which Plaintiff is entitled at law or in equity, including injunctive and/or declaratory relief.

Respectfully Submitted By:

*D. Clay Wirtz*

D. Clay Wirtz, Legal Counsel for Dung Quoc Pham
305 Glenmar Avenue
Monroe, Louisiana 71201
Tel. (318) 323-8990
BRN 22687

THE DEFENDANTS HAVE BEEN SERVED NOTICE OF THIS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION THROUGH THEIR IN-HOUSE COUNSEL, AS FOLLOWS:

VIA EMAIL:

Sherrye Carradine, individually and in her official capacity as In-House Counsel, University of Louisiana at Monroe; a resident of the full age of majority of Ouachita Parish, Louisiana;

carradine@ulm.edu

**STATE OF LOUISIANA**

**PARISH OF OUACHITA**

### AFFIDAVIT AND VERIFICATION

BEFORE ME, NOTARY PUBLIC, came and appeared Dung Quoc Pham, who swore that he is a major resident of Ouachita Parish, Monroe, Louisiana 71201, and that all of the allegations of fact set forth in the subject Complaint and Request for a Temporary Restraining Order are true and correct.

_____
Dung Quoc Pham

Sworn to and subscribed in my presence this _6th_ day of April, 2016.

_____
D. Clay Wirtz

D. CLAY WIRTZ
LBRN 22687
COMM. LIFE

23