UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DUNG QUOC PHAM                                    CIVIL ACTION NO. 16-00467

VERSUS                                            JUDGE ROBERT G. JAMES

UNIVERSITY OF LOUISIANA AT MONROE,                MAG. JUDGE KAREN L HAYES
ET AL.

RULING

Plaintiff Dung Quoc Pham ("Pham") brings this suit against Defendants the University of

Louisiana at Monroe ("ULM"); Dean Benny Blaylock, individually and in his official capacity as

Dean of ULM's College of Pharmacy ("Dean Blaylock"); Dr. Keith Jackson, individually and in his

official capacity as Faculty Chairperson of the Board of Ethics of ULM's College of Pharmacy ("Dr.

Jackson"); Dr. Tibb Jacobs, individually and in her official capacity as Faculty Chairperson of the

Board of Ethics of ULM's College of Pharmacy ("Dr. Jacobs"); Dr. Michael Cockerham,

individually and in his official capacity as Associate Dean of Academic Affairs of ULM's College

of Pharmacy ("Dr. Cockerham"); Dr. Khalid El Sayed, individually and in his official capacity as

Professor of ULM's College of Pharmacy ("Dr. El Sayed"); Eric A. Pani, individually and in his

official capacity as Vice President of Academic Affairs for ULM ("Pani"); and Sherrye Carradine,

individually and in her official capacity as in-House Counsel for ULM ("Carradine") (referred to

collectively as "Defendants") for purported violations of 42 U.S.C. § 1983 ("§ 1983") and state law.

Pending before the Court is Pham's Motion to Amend and Defendants' Motion to Dismiss.

For the following reasons, Pham's Motion to Amend is **GRANTED** and Defendants' Motion to

Dismiss is **GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.**

I.     FACTUAL SUMMARY

This suit concerns Pham's expulsion from ULM's College of Pharmacy. The following allegations are taken from Pham's Complaint:

Pham was a third-year student at ULM's College of Pharmacy. He had acquired 90 credit hours at the time of his expulsion. A doctorate degree in Pharmacy requires a total of 159 credit hours. At the time of his expulsion, Pham had taken out student loans to pay ULM's College of Pharmacy more than $100,000 for tuition.

A.     The Initial Charge and Hearing

On March 19, 2015, Dr. Cockerham sent written notice to Pham that Doctors El Sayed and Adam Pate ("Pate") (not a named party) had submitted written accusations regarding Pham's alleged academic dishonesty. Specifically, the professors claimed that Pham violated Rules 3.01, .02, and .03 of the ULM College of Pharmacy's Code of Ethical and Professional Conduct ("the Code") by cheating during the administration of an Infectious Disease examination. However, the notice to Pham only indicated that he had been accused of cheating, without divulging more specific allegations.

On April 2, 2015, the ULM Ethics Board conducted the initial disciplinary hearing against Pham. Pham was not represented by counsel. He pleaded not guilty to the charges. According to the one-page document described as the "hearing minutes," the Ethics Board found Pham guilty of cheating based primarily on the testimony of Doctors El Sayed and Pate, as well as ExamSoft records.[1] The Ethics Board recommended that Pham receive a zero grade for the examination and

---

[1]ExamSoft is a program which allows students to take examinations on their computers without being able to access the internet or other computer programs. *See* EXAMSOFT, Http://www.learn.examsoft.com/exam-takers-overview (last visited June 6, 2016).

probation for the duration of his studies at ULM's College of Pharmacy.

On April 7, 2015, in accordance with Rule 11.1 of the Code, Dr. Jackson sent a letter to Pham advising him that the Ethics Board found him guilty by a preponderance of the evidence for "giving unauthorized assistance to a fellow student on an exam and receiving unauthorized assistance."

The Code allows disciplined students to file an appeal. During the period within which to file an appeal, Dr. El Sayed met with Pham. Dr. El Sayed told Pham that he needed to write a letter to Dean Blaylock admitting the charges, apologizing, and begging for mercy from the Ethics Board and Dean Blaylock while they considered sanctions.

On April 9, 2015, Pham, following Dr. El Sayed's advice, sent a letter to Dean Blaylock. Pham did not admit cheating in the letter. Rather, Pham stated "I regret my entire actions and do apologize for my misconduct...I swear that I will never put myself in this situation again and be of good conduct throughout my stay in school and the rest of my career...I pray that this letter has moved the Office of the Dean to favor a finding different from the Board. Finally, I pray for mercy and would be very grateful if my request is granted."

That same day, Pham wrote a letter to Dean Blaylock and Dr. Jackson intending to show grounds for appeal pursuant to Rule 14.02.02 of the Code on the basis of new evidence.

On April 15, 2015, Dean Blaylock gave Pham written notice that he would uphold the Ethics Board's findings and recommendations with respect to the sanctions, claiming that the transgression had occurred during the April 1, 2015 examination–not March 12, 2015, as was previously alleged. In addition to this discrepancy, Pham claims Dean Blaylock upheld the decision of the Ethics Board without analysis and even though a Code rule mandates that the Dean consider the appeal. According

to Pham, Dean Blaylock simply endorsed the Ethics Board's decision. Pham appealed this decision to Vice-President of Academic Affairs, Pani, on April 15, 2015.

On May 7, 2015, Pham asserts that he realized he was "duped." He wrote a letter to Pani explaining that he had written the previous letter to Dean Blaylock and Dr. Jackson upon the advice of Dr. El Sayed–his original accuser. He retracted the statements made in the April 9, 2015 letter.

On May 16, 2015, Pani denied Pham's appeal stating in part, "I find no grounds for an appeal since you admitted the misconduct in your Appeal to Dean Blaylock."

### B.    Second Incident and Hearing

On November 12, 2015, Dr. Cockerham sent written notice to Pham that Dr. Courtney Robertson ("Dr. Robertson") (not a named Defendant) had submitted written accusations regarding allegations of academic dishonesty in violation of Rule 3.01. of the Code  "that occurred during the integrated Lab Course on Thursday, November 5, 2015." Pham was charged with the use of unauthorized materials.

On November 16, 2015, Pham's counsel provided written notice that Pham denied the charges and requested a formal hearing pursuant to Rules 7.01 and 10.03 of the Code. In the letter, Pham's counsel indicated that he wished to cross-examine witnesses. Dr. Cockerham responded by letter on November 17, 2015, and stated that, although Pham's counsel could not participate in the proceedings, Pham would be able to present evidence and question witnesses.

Despite Rule 10.05 of the Code which requires the hearing to be scheduled within ten (10) days of the request, the Ethics Board scheduled the formal hearing for December 14, 2015.

At the hearing, Dr. Robinson testified. Pham was not allowed to ask questions. Following Dr. Robinson's testimony, Dr. Roxie Stewart testified. Pham attempted to ask questions to no avail.

4

Finally, graduate assistant Sweilem Al Rihani testified. Pham was once again precluded from asking questions. Defendants' refusal of Pham's request to question witnesses deviated from Rule 11.04 of the Code which allows either party before the board to call witnesses and question witnesses. Pham claims that this deviation from the Code–as well as a written promise– demonstrates bad faith.

After the hearing, Pham's counsel asked Dr. Cockerham for a copy of the recording. Dr. Cockerham stated that a CD copy of the hearing would be available to Pham. The Ethics Board recommended that Pham be expelled for the use and possession of unauthorized materials.

On December 16, 2015, Dean Blaylock wrote to Pham, indicating that he agreed with the Board's findings and recommendations with respect to expulsion. Pham did not receive any written findings of fact or conclusions from the Ethics Board, even though Rule 11.11of the Code assures their availability to the accused.

Pham's counsel provided notice of intent to appeal the expulsion. In the letter, Pham's counsel alerted Dean Blaylock that neither the Ethics Board's written findings of facts and conclusions, nor a copy of the recording had been provided to Pham.

On January 4, 2016, Pham's counsel hand delivered a letter to Dean Blaylock noting numerous violations of the Ethics Board's own Code in the disciplinary proceedings against Pham. Dean Blaylock agreed to hold a "second, abbreviated hearing" to occur "as soon as possible." Pham's counsel wrote back reiterating the need for the transcript and the Ethics Board's written findings. Defendants finally provided these materials on January 12, 2016. The supplemental hearing was scheduled for January 21, 2016.

After review of the written findings and audio recording, Pham's counsel learned that a determining factor in the Ethics Board's decision to expel Pham was its consideration of evidence

which was not presented at the hearing, but only viewed by the Ethics Board during deliberations. The document was the answer sheet for the November 5, 2015 examination. Pham's counsel requested the document for purposes of appeal and to prepare for the supplemental hearing.

Following the January 21, 2016 hearing, Dean Blaylock sent a letter dated January 23, 2016, in which he approved the Ethics Board's findings. The Ethics Board issued no written findings of fact and conclusions after the January 21, 2016 supplemental hearing.

On February 1, 2016, Pham appealed to Pani. On April 1, 2016, Pani upheld the Board's decision to expel Pham for "simultaneously possess[ing] materials and the graded [exercise's] answer sheet, violating Rule 3.01.01 of the [Code]." Pham claims that Pani's charge deviates from the original charge of using unauthorized materials.

On April 6, 2016, Pham filed a Complaint in this Court [Doc. No. 1], as well as a request for a temporary restraining order and preliminary injunction to prevent his expulsion. [Doc. No. 2]. The Court denied Pham's request for a temporary restraining order on April 8, 2016. [Doc. No. 5]. A hearing on the proposed preliminary injunction is scheduled for June 7, 2016.

On May 11, 2016, Defendants filed the instant Motion to Dismiss. [Doc. No. 11]. In their prayer for relief, Defendants seek the following:

1.      That ULM and the Ethics Board be dismissed as parties.

2.      That Pham's breach of contract and defamation claims be dismissed.

3.      That Pham amend his Complaint to remove the University of Louisiana at Monroe and the Ethics Board as Defendants and substitute the Board of Supervisors of the University of Louisiana System ("ULS") in their stead.

4.      That Pham's request for retroactive injunctive relief be dismissed.

5.      That Pham's request for prospective injunctive relief be dismissed.

*Id*.

The parties filed various reply memoranda. The matter is now ripe.

II.    **LAW AND ANALYSIS**

    **A.    Motion to Dismiss Standards**

        **1.    Rule 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action for lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Defendants' Eleventh Amendment arguments are properly addressed under Rule 12(b)(1). *United States v. Tex. Tech Univ.*, 171 F.3d 279 (5th Cir. 1999) (treating motion to dismiss on Eleventh Amendment grounds as a 12(b)(1) motion to dismiss).

        **2.    Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. In evaluating a 12(b)(6) motion, "the court must accept as true the well-pleaded facts in the plaintiff's complaint and must construe the facts in a light most favorable to plaintiff." *Steel v. Police Dep't of Oakdale*, 08-01947, 2010 WL 816177 at *2 (W.D. La. March 9, 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion is the proper motion to seek dismissal of parties without the procedural capacity to be sued. *See Indest v. Freeman*

*Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

**B.      Pham's Motion to Amend, Procedural Capacity, and Eleventh Amendment Issues**

**1.      Pham's Motion to Amend and Procedural Capacity Issues**

Pham, in an opposition memorandum, seeks leave to amend his pleadings to substitute the Board of Supervisors of the University of Louisiana System ("ULS") for ULM. Under Federal Rule of Civil Procedure 15(a)(1)(B), Pham had 21 days from the date Defendants filed the Motion to Dismiss to amend his Complaint. Defendants filed the Motion to Dismiss on May 11, 2016. The motion to amend was filed on May 17, 2016. Accordingly, Pham's motion to amend is **GRANTED**. ULS shall be substituted for ULM.

Defendants also claim that the Ethics Board lacks the procedural capacity to be sued in federal court.[2] Defendants are correct. The correct party in suit is ULS. *See* LA. REV. STAT. 17:3351(A)(1). Accordingly, Defendants motion to dismiss Pham's claims against the Ethics Board is **GRANTED**, and  those claims are **DISMISSED WITH PREJUDICE**.

**2.      Eleventh Amendment**

The Court next addresses Defendants' Eleventh Amendment concerns. Defendants argue that the Eleventh Amendment bars all claims for relief against ULS, claims for monetary damages against the state officials in their official capacities, and all relief of any kind to the extent the underlying claim is based on state law breach of contract and defamation causes of action. The Court agrees.[3]

_____

[2]It is unclear whether Pham's Complaint names the Ethics Board as a Defendant. Nevertheless, for the sake of thoroughness, the Court considers the merits of the motion to dismiss the Ethics Board.

[3]Defendants pray that Pham's defamation claims be dismissed. However, in his memorandum in opposition, Pham indicates that he does not assert a defamation claim. [Doc.

The Eleventh Amendment and attendant principle of sovereign immunity generally bar suits against the state and its agencies in federal court unless the state consents to the suit. *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). It is irrelevant whether the requested relief is injunctive or monetary. *See Carpenter v. Miss. Valley State Univ.*, 807 F.Supp.2d 570, 580 (N.D. Miss. 2011) ("This immunity is far reaching. It bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments.").

Plaintiffs can escape this rule by suing state officials in their official capacity for prospective injunctive relief based on a continuing violation of **federal** law. *See Ex Parte Young*, 209 U.S. 123 (1908).[4] This exception to the Eleventh Amendment is often referred to as the *Ex Parte Young* exception. However, the exception does not save pendant state law claims against state officials in their official capacity. *See Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992).

Finally, the Eleventh Amendment ordinarily allows claims, whether based on federal or state law, against state officials in their individual capacities which seek monetary damages when the individual will be personally liable for the judgment. *Henley v. Simpson*, 527 Fed. App'x 303, 305-06 (5th Cir. 2012) (citing *Hafer v. Melo*, 502 U.S. 21 (1991); *Kentucky v. Graham*, 473 U.S. 159 (1985)).  The Court now applies those principles to the parties and claims in this case.

---

No. 13, p. 6]. ("The defendants' attempts to mischaracterize [sic] Pham's Complaint as anything other than violation of due process in a student discipline case fail."). Accordingly, the Court does not address any defamation issue in this Ruling and Judgment.

[4] The *Ex Parte Young* exception does not allow suits against state officials in their official capacities for monetary damages because such a suit would be the equivalent of a suit for monetary damages against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### a.      ULS

ULS, as an agent of the state, is entitled to Eleventh Amendment immunity from suit absent waiver or abrogation.  *See, e.g., Delahoussaye v. New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991); *Richardson v. Southern Univ.*, 118 F.3d 450, 456 (5th Cir. 1997); *Jones v. Board of Sup'rs of the Univ. of La. Sys.*, 58 F.Supp.3d 670, 673 (W.D. La. 2014). Louisiana has not waived its immunity from suit in federal court. LA. CONST. art. XII § 10; LA. REV. STAT. ANN. § 13:5106. Thus, ULS is immune from suit in this Court no matter whether the relief sought is injunctive or monetary, or whether the cause of action is based on federal or state law. To the extent Defendants seek dismissal of all claims against ULS, the motion is **GRANTED** and those claims are dismissed **WITHOUT PREJUDICE**.[5]

### b.      Breach of Contract Claim

Pham complains that ULS, through the state officials named as Defendants in this suit, breached a contract with Pham by not adhering to disciplinary regulations found in the Code.  Breach of contract is a state law claim. To the extent the claim is brought against the state officials in their official capacities it must be dismissed because the *Ex Parte Young* exception does not apply to pendant state law claims. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104-05 (1984).

The breach of contract claim against the state officials in their individual capacities fares no better. The state officials in their individual capacities were simply not parties to the alleged contract with the university. *See, e.g. Mathai v. Board of Sup'rs of LSU*, 959 F.Supp.2d 951, 961-62 (E.D.

---

[5]A Rule 12(b)(1) dismissal for lack of subject matter jurisdiction under the Eleventh Amendment is a dismissal without prejudice. *Warnock v. Pecos Cnty. Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)

La. 2013 ("Regardless of any contract that plaintiff may have formed with the school, she has not

alleged that Dr. Nelson was a party to the contract and thus liable for its breach."); *Bisong v. Univ.*

*of Houston*, 06-1815, 2006 WL 2414410 at *3 (S.D. Tex. Aug. 18, 2006); *Allen v. Tulane Univ.*, No.

92-4070, 1993 WL 459949 at *9 (E.D. La. Nov. 2, 1993) (dismissing breach of employment contract

claim against school dean, since he was not party to the contract); *Dover Elevator Co. v. Ark. State*

*Univ.*, 64 F.3d 442, 447 (8th Cir. 1995).The state officials may have been parties to the contract in

their official capacities, but that is of little comfort to Pham in this case because of the *Ex Parte*

*Young* exception's inapplicability to pendant state law claims.

Thus, to the extent Defendants move the Court to dismiss Pham's state law breach of contract

claim, the motion is **GRANTED**. The state law breach of contract claim against Defendants in their

official capacities is **DISMISSED WITHOUT PREJUDICE**. The state law breach of contract

claim against Defendants in their individual capacities is also **DISMISSED WITH PREJUDICE**.

### c.      *Claims for Monetary Damages Against Defendants in their Official Capacities*

The Eleventh Amendment bars all claims for monetary relief against the state or its agencies

without the state's consent. Because a suit against state officials in their official capacities is akin

to a suit against the state itself, Defendants' Motion to Dismiss is **GRANTED** to the extent they seek

dismissal of Pham's claims for monetary damages against them in their **official** capacities based on

alleged violation of federal law. Those claims are **DISMISSED WITHOUT PREJUDICE**.

### d.      *The Eleventh Amendment and the Injunctive Relief Sought Against Defendants in their Official Capacities*

Although the Court will not rule on the pending motion for a preliminary injunction until

after the June 7 hearing, it addresses Defendants' contention that the *Ex Parte Young* exception does

not allow Pham to seek injunctive relief against the state officials in their official capacities because the injunction would be retroactive and, therefore, prohibited by the Eleventh Amendment. *See Simmang v. Tex. Bd. Of Law Examiners*, 364 F.Supp.2d 874, 886 (W.D. Tex. 2004) (noting that the *Ex Parte Young* exception applies only to suits for prospective injunctive relief). The Court disagrees and finds that Pham's requested relief is prospective in nature, and, therefore, falls within the *Ex Parte Young* exception.

Essentially, the equitable relief that Pham requests is reinstatement to the University pending a constitutionally-sufficient disciplinary hearing. Courts have held that this type of relief is cognizable under the *Ex Parte Young* exception. *See Nelson v. Univ of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (collecting cases from Fifth Circuit and other jurisdictions finding reinstatement is cognizable under *Ex Parte Young* exception). Accordingly, to the extent Defendants seek dismissal of Pham's claims for injunctive relief against the state officials in their official capacities on Eleventh Amendment grounds, the motion is **DENIED**.

### C.     Qualified Immunity

Although a suit for monetary relief against state officials in their **official** capacities is inappropriate, the Eleventh Amendment does not necessarily bar claims for monetary damages against state officials in their **individual** capacities. However, the qualified immunity defense may bar such claims.

Qualified immunity is a doctrine that allows public officials to make reasonable, but mistaken, legal judgments. It applies to claims against officials for monetary damages in their individual capacities. *See Tinsley v. Pittari*, 952 F.Supp. 384, 389 (N.D. Tex. 1996) ("Qualified immunity protects government officials performing discretionary functions from personal liability

as long as their conduct does not violate clearly established constitutional or federal statutory rights.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).More robust descriptions of the doctrine state that it provides ample protection for all but the plainly incompetent or those who knowingly violate the law. *See Mangieri v. Clifton*, 29 F.3d 102, 1017 (5th Cir. 1994) (citing *Malley v. Briggs*, 475 U.S. 335 (1986). Generally, the qualified immunity paradigm consists of two inquiries which the Court can address in whatever order it chooses. *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012). The first question is whether the facts alleged, viewed in the light most favorable to the party asserting an injury, state a violation of a constitutional right. *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The next inquiry asks whether the federal right is clearly established such that all reasonable officers would understand what they are doing violates the law. "For a law to be 'clearly established,' the law must so clearly and unambiguously prohibit an official's conduct that 'every reasonable official would have understood that what he is doing violates that right.'" *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 471 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To be clearly established, the legal issue must be "beyond debate." *See Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted).

In their prayer for relief, Defendants do not explicitly seek qualified immunity. However, the parties' briefing addresses the issue, albeit in somewhat cursory fashion. To the extent Defendants move for qualified immunity from monetary damages against the state officials in their individual capacities, the Court will **DEFER** ruling on the motion to allow the parties to more thoroughly brief the issue. Although the parties should brief whatever issues they find pertinent, the Court seeks briefing on the following issues particularly:

1.     Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a student has a liberty or property interest in post high-school education.

2.     Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a procedural due process violation could result from a university's appeals process.

3.     Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a student was entitled to particularized notice and certain procedures in a disciplinary action not resulting in a suspension or expulsion.

The Court asks that the parties include this supplemental briefing in their post-preliminary injunction hearing briefs, with deadlines to be set after or during that hearing.

## III.   CONCLUSION

For the foregoing reasons, Pham's motion to amend is **GRANTED**. ULS shall replace ULM as a Defendant in this suit.

Further, Defendants' motion to dismiss [Doc. No. 11] is **GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART**. To the extent Defendants seek dismissal of Pham's claims against ULS, dismissal of Pham's claims against the Ethics Board, dismissal of Pham's state law breach of contract claim, and dismissal of Pham's claims for monetary damages against the state officials in their official capacities, the motion is **GRANTED**. The claims against the Ethics Board and the state officials in their individual capacities for breach of contract are **DISMISSED WITH PREJUDICE**. The claims against ULS and the state officials in their official capacities for monetary damages are **DISMISSED WITHOUT PREJUDICE**.

Further, to the extent Defendants seek dismissal of Pham's § 1983 claim for injunctive relief against the state officials in their official capacities based on a theory that the relief is retroactive, the motion is **DENIED**.

14

Finally, to the extent Defendants seek qualified immunity, their motion is **DEFERRED** until the issue is completely briefed. Although the parties should brief whatever issues they find pertinent to the qualified immunity issue, the Court seeks briefing on the following issues in particular:

1.   Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a student has a liberty or property interest in post-high school education.

2.   Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a procedural due process violation could result from a university's appeals process.

3.   Whether, at the time of the disciplinary actions at issue in this case, it was clearly established that a student was entitled to particularized notice and certain procedures in a disciplinary action not resulting in a suspension or expulsion.

The Court asks that the parties include this supplemental briefing in their post-preliminary injunction hearing briefs, with deadlines to be set after or during that hearing.

MONROE, LOUISIANA, this 6th day of June, 2016.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

15