UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DUNG QUOC PHAM                                    CIVIL ACTION NO. 16-00467

VERSUS                                                    JUDGE ROBERT G. JAMES

UNIVERSITY OF LOUISIANA AT MONROE,          MAG. JUDGE KAREN L HAYES
ET AL.

RULING

Plaintiff Dung Quoc Pham ("Pham") brings this suit against Defendants the University of

Louisiana System Board of Supervisors ("ULM"); Dean Benny Blaylock, individually and in his

official capacity as Dean of ULM's College of Pharmacy ("Dean Blaylock"); Dr. Keith Jackson,

individually and in his official capacity as Faculty Chairperson of the Board of Ethics of ULM's

College of Pharmacy ("Dr. Jackson"); Dr. Tibb Jacobs, individually and in her official capacity as

Faculty Chairperson of the Board of Ethics of ULM's College of Pharmacy ("Dr. Jacobs"); Dr.

Michael Cockerham, individually and in his official capacity as Associate Dean of Academic Affairs

of ULM's College of Pharmacy ("Dr. Cockerham"); Dr. Khalid El Sayed, individually and in his

official capacity as Professor of ULM's College of Pharmacy ("Dr. El Sayed"); Eric A. Pani,

individually and in his official capacity as Vice President of Academic Affairs for ULM ("Pani");

and Sherrye Carradine, individually and in her official capacity as in-House Counsel for ULM

("Carradine") (referred to collectively as "Defendants") for purported violations of 42 U.S.C. § 1983

("§ 1983").

Pending before the Court are Pham's Motion for a Preliminary Injunction [Doc. No. 2] and

Defendants' Motion to Dismiss all claims against Defendants for monetary damages in their individual capacities on qualified immunity grounds. [Doc. No.  11]. For the following reasons, Pham's Motion for a Preliminary Injunction is DENIED. Defendants' Motion to Dismiss is GRANTED to the extent they seek qualified immunity with respect to all claims against them in their individual capacities for monetary damages. Those claims are DISMISSED WITH PREJUDICE.

## I.   FINDINGS OF FACT[1]

At the time of his expulsion, Pham was a third-year pharmacy student at the ULM's College of Pharmacy. Pham was allegedly caught cheating on multiple occasions which caused the school to take disciplinary actions. He asserts that the College of Pharmacy failed to comply with due process before punishing him on two occasions, the second of which resulted in his expulsion.

### A.     Initial Charge ("Pham I")

The initial charge of cheating related to the administration of an Infectious Disease examination. Professors Adam Pate ("Pate") and El Sayed claimed to have witnessed Pham cheating with another student. Dr. Cockerham sent written notice to Pham that the professors alleged academic dishonesty in violation of Rules 3.01, 02, and 03 of the University of Louisiana at Monroe College of Pharmacy Code of Ethical and Professional Conduct ("the Code").[2]  Pham requested a

---

[1]Federal Rule of Civil Procedure 52(a)(1) provides that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. Fifth Circuit precedent commands that this rule be applied in the context of preliminary injunctions. *Software Dev. Tech. v. TriZetto Corp.*, 590 Fed. App'x. 342, 344 (5th Cir. 2014) (citing *Petrello v. Nath*, 350 Fed. App'x 887, 890-92 (5th Cir. 2009); *Sierra Club, Lone Star Chapter v. F.D.I..C.*, 992 F.2d 545, 551-52 (5th Cir. 1993)). Sections I and II serve as formal findings of fact and conclusions of law for purposes of Pham's request for a preliminary injunction.

[2]The Court has taken judicial notice of the Code in accordance with Federal Rule of Evidence 201.

hearing in accordance with the Code.

On April 2, 2015, the Ethics Board conducted the initial hearing against Pham. Pham was not represented by counsel and pled not guilty. According to the hearing minutes, the Ethics Board found Pham guilty on the basis of testimony from Pate and Dr. El Sayed, which included testimony concerning ExamSoft records from the examination. The actual ExamSoft records were not introduced at the hearing, or, it appears, on appeal.[3] The Ethics Board recommended that Pham receive a zero grade for the examination and probation for the duration of his tenure at ULM's pharmacy school.

On April 7, 2015, Jackson sent a letter to Pham notifying him that the Ethics Board had found him guilty by a preponderance of the evidence for "giving unauthorized assistance to a fellow student on an exam and receiving unauthorized assistance." According to Defendants, this violation alone would have been grounds for expulsion. After this letter was sent, Pham sought the advice of Dr. El Sayed who recommended that Pham apologize for his alleged misconduct and seek mercy.

Pham followed Dr. El Sayed's advice and wrote a letter to Dean Blaylock apologizing for his misconduct but not explicitly admitting cheating. On April 15, 2015, Dean Blaylock gave Pham written notice that his Office would uphold the Ethics Board's findings and recommendation. According to Pham, Dean Blaylock's review was meaningless because he essentially rubber-stamped the findings and recommendation of the Ethics Board.

Pham appealed this adverse decision to Pani, the final arbiter in the process. According to Pham, at this time, he realized that he had been "duped." He wrote a letter to Pani explaining that

---

[3]ExamSoft is a program which allows students to take examinations on their computers without being able to access the internet or other computer programs. *See* EXAMSOFT, Http://www.learn.examsoft.com/exam-takers-overview (last visited July 7, 2016).

he had written the apology letter on the advice of Dr. El Sayed–his original accuser. Pani denied

Pham's appeal, stating that "I find no grounds for your appeal since you admitted the misconduct in

your appeal to Dean Blaylock."

### B.      Second Charge ("Pham II")

Around November 12, 2015, Dr. Courtney Robinson ("Dr. Robinson") informed Dr.

Cockerham that she caught Pham using unauthorized materials in the completion of a graded

examination. On November 12, 2015, Dr. Cockerham sent written notice to Pham that Dr. Robinson

had accused him of academic dishonesty in violation of Rule 3.01.01.[4]

On November 16, 2015, Pham's counsel provided notice to Dr. Jacobs and Dr. Cockerham

that Pham denied the charges against him and requested a formal hearing. Pham's counsel requested

the opportunity to cross examine witnesses. This request was denied, but Dr. Cockerham indicated

that Pham would be allowed to cross examine witnesses in accordance with the Code.

The formal hearing was scheduled for December 14, 2015. Before the hearing, Pham

requested that the Ethics Board consider his answer sheet, which he felt would demonstrate his

innocence. At the hearing, Pham and his counsel were prevented from cross examining witnesses.

Moreover, the Ethics Board did not consider the answer sheet in Pham's presence. Instead, the Ethics

Board considered the evidence during deliberations and found that it showed Pham's guilt. The

Ethics Board found Pham guilty of using unauthorized materials and recommended expulsion.

---

[4]Rule 3.01.01 provides that " the receipt, possession or use of any material or assistance not authorized by the instructor in the preparation of papers, reports, examinations, or any class assignment to be submitted for credit as part of a course[,]" shall be a violation of the Code. *See* UNIVERSITY OF LOUISIANA AT MONROE COLLEGE OF PHARMACY CODE OF ETHICAL AND PROFESSIONAL CONDUCT, www.ulm.edu/pharmacy/documents/ospa/codeofconductv82011.pdf. (Last visited July 7, 2016).

On December 16, 2015, Dean Blaylock wrote Pham and informed him that he agreed with the Ethics Board's findings and recommendation of expulsion. Pham did not receive any findings of fact or conclusions from the Ethics Board despite Rule 11.11 which requires their divulgence.

On January 4, 2016, Pham's counsel delivered a letter to Dean Blaylock which documented multiple instances of the Ethics Board and Dean Blaylock failing to comply with the Code. That same day, Dean Blaylock emailed Pham and informed him that he would grant a second, abbreviated hearing in which Pham could cross examine witnesses. The findings of fact and conclusions from the initial hearing were given to Pham on January 12, 2016.

On January 21, 2016, the supplemental hearing was held during which Pham was allowed to cross examine witnesses. The Ethics Board maintained its initial findings and recommendation. On January 23, 2016, Dean Blaylock sent a letter to Pham informing him that he agreed with the Ethics Board's findings and recommendation. No findings of fact or conclusions were ever provided to Pham from the supplemental hearing.

On February 1, 2016, Pham appealed the decision to Pani. Pham presented an appeal which noted multiple deviations from the Code including Dean Blaylock's decision to adopt the Ethics Board's findings before Pham had even appealed the decision.

On March 24, 2016, Pani sent Pham a letter which specifically addressed the complaint that Dean Blaylock failed to hear his appeal. Pani granted Pham two options. The first option entailed Pani suspending his review of the appeal until Dean Blaylock had a chance to properly review the appeal. If Dean Blaylock upheld the Ethics Board's findings and recommendation, Pani would resume his review of the appeal. The second option involved foregoing the appeal to Dean Blaylock so that the case effectively went straight from the Ethics Board to Pani–the final arbiter. It is

5

somewhat unclear, but it appears that Pham chose option two, asking Pani to remedy the "grave injustice" and denial of constitutional rights stemming from the proceedings.

On April 1, 2016, Pani adopted the Board's decision to expel Pham from the pharmacy school. The letter stated that Pham "simultaneously possessed unauthorized materials and the graded [exercise's] answer sheet, violating Rule 3.01.01 of the ULM School of Pharmacy Code of Ethical and Professional Conduct."

On April 6, 2016, Pham filed a Complaint in this Court seeking a temporary restraining order, preliminary injunction, and monetary damages. [Doc. Nos. 1, 2]. Specifically, he asserts that Defendants' actions deprived him of a protected liberty or property interest (his continuing education) without due process of law. He also asserted that the Code was a binding contract between university and student which ULM breached by failing to conduct the disciplinary proceedings in strict compliance with the Code.

The Court denied Pham's request for a temporary restraining order on April 8, 2016. [Doc. No. 5]. On May 11, 2016, Defendants filed a motion to dismiss certain parties and claims from this lawsuit. [Doc. No. 11]. On June 6, 2016, the Court granted the motion in part, but deferred ruling on the issue of qualified immunity pending further briefing.[5] [Doc. Nos. 20, 21].

On June 7 and 8, 2016, the Court held a hearing on Pham's motion for a preliminary injunction. The parties submitted post-hearing briefs on the preliminary injunction issue. The parties also submitted further briefing on the qualified immunity issue. The Court is now prepared to rule on both issues.

------

[5]Specifically, the Court dismissed Pham's state law breach of contract claim. The Court also dismissed Pham's claims against the University of Louisiana at Monroe and the Ethics Board because those entities lack the capacity to be sued in federal court.

## II.   CONCLUSIONS OF LAW

### A.   Preliminary Injunction Standard

There are four traditional criteria a party moving for a preliminary injunction must satisfy: (1) irreparable injury; (2) substantial likelihood of success on the merits; (3) a favorable balance of hardships; and (4) no adverse effect on the public interest. *Black Fire Fighters Ass'n of Dall. v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). A preliminary injunction is an extraordinary remedy; it should not be granted unless the movant clearly satisfies all four requirements. *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).

Additionally, where, as here, the movant seeks to alter the status quo as opposed to preserve it, a preliminary injunction "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Roark v. Individuals of Fed. Bur. of Prisons, Former and Current*, 558 Fed. App'x 471 (5th Cir. 2014) (quoting *Martinez v. Matthews* 544 F.2d 1233, 1243 (5th Cir. 1976)); *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005); *Tom Doherty Associates Inc. v. Saban Entm't Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

Ultimately, after applying these standards, the Court finds that Pham has not met his burden of convincing the Court that a preliminary injunction–an "extraordinary remedy"–is appropriate in this case.

### B.   Substantial Likelihood of Success on the Merits in this Case

#### 1.   *Procedural Due Process in the University Context*

Initially, the Court finds that Pham has not shown a substantial likelihood of success on the merits. The United States Supreme Court has never addressed whether a university student has a protected liberty or property interest in *post-high school education*. There is disagreement among

the circuits, but the Fifth Circuit has held, in seemingly applicable precedent, that a university student has some type of protected interest which must be appropriately safeguarded prior to expulsion. *See Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961).

Thus, in accordance with *Dixon*, ULM could not deprive Pham of his university education without adequate due process.

The first question is whether the dismissal is academic or disciplinary in nature. There are less stringent due process requirements for academic dismissals. *See Shah v. Univ. of Tex. Southwestern Med. Sch.*, 54 F.Supp.3d 681, 692 (N.D. Tex. 2014) (citing *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 98 (1978)). Disciplinary dismissals, on the other hand, require more safeguards. In the context of a ten-day suspension from high school, due process requires "that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). The "hearing" before the school need not be formal, but may be "an informal give and take." *Beauchene v. Miss. College*, 986 F.Supp.2d 755, 769 (S.D. Miss. 2013) (citations omitted).

In the context of a disciplinary expulsion, *Dixon* remains instructive:

> [T]he notice should, we think, comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending on the circumstances of the particular case...[b]y its nature, charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial

8

> hearing, with the right to cross examine witnesses, is required...[i]n the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies.

In addition to those safeguards, a student is entitled to a neutral decision-maker free from bias. "There is no question that a biased decision-maker renders a disciplinary process unconstitutional." *Hess v. The Bd. of Tr. of Southern Ill. Univ.*, 14-00727, 2015 WL 8301461 at *10 (S.D. Ill. Dec. 9, 2015) (citing *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975)); *Batagiannis v. W. Lafayette Cty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006). But, "[i]n a school disciplinary context, the level of impartiality required for the decision-maker does not reach the absolute neutrality required in the criminal justice system." *Riggan v. Midland Indep. Sch.  Dist.*, 86 F.Supp.2d 647, 656 (W.D. Tex. 2000). Moreover, there is a presumption of honesty and integrity in those serving as adjudicators. *See Withrow*, 421 U.S. at 47. In order to make out a procedural due process claim based on bias, *actual* bias must be proved.

Additionally, a University's departure from its own rules and regulations does not, by itself, violate procedural due process unless the rule or regulation codifies the pertinent constitutional standard. *See, e.g.*; *Brown v. Univ. of Kansas*, 16 F.Supp.3d 1275, 1290 (D. Kan. 2014) *aff'd* 599 Fed. App'x. 833 (10th Cir. 2015); *Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000); *Schuler v. Univ. of Minn.,* 788 F.2d 510, 515 (8th Cir. 1986); *Jones v. Bd. of Gov. of North Carolina*, 704 F.2d 713, 717 (4th Cir. 1983); *Shah,* 54 F.Supp.3d at 681, n. 15*; Cobb v. Rector and Visitors of Univ. of Virginia*, 69 F.Supp.2d 815, 828 (W.D. Va. 1999); *Edwards v. Bd. of Regents of Northwest Missouri State Univ.*, 397 F.Supp.822, 829-30 (W.D. Mo. 1975). A plaintiff has no due process right to state-implemented procedures. The relevant inquiry at all times is whether or not a plaintiff has been afforded constitutionally adequate notice and a constitutionally

adequate hearing. However, the continuous violation of state-implemented rules could *conceivably* violate procedural and/or substantive due process if such conduct shocks the conscience or results in fundamentally unfair proceedings.

Finally, although case law has given general guidelines as to what specific procedures should be employed in the university context, it is important to remember that "the requisite elements of procedural due process are not wooden absolutes applicable to each case regardless of circumstances." *U.S. v. Richardson Indep. Sch. Dist.*, 483 F.Supp. 80, 85 (N.D. Tex. 1979).

### 2.      *Substantive Due Process in the University Context*

In addition to procedural due process, the Fourteenth Amendment also protects substantive due process rights. The substantive component of the due process bars certain arbitrary government actions, "even if their implementation is fair." *Dismukes v. Hackathorn*, 802 F.Supp. 1442, 1447 (N.D. Miss. 1992) (citations omitted). In determining whether the government's action has been arbitrary in the constitutional sense, the Court asks whether the government action "shocks the conscience." *See Kinzie v. Dallas Cty. Hosp. Dist.*, 239 F.Supp.2d 618, 628 (N.D. Tex. 2003) (citations omitted). "In the case of the specific acts of Defendants 'only the most egregious official conduct' is arbitrary in the constitutional sense." *Hess*, 2015 WL 8301461 at *11 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

### 3.      *Application to Pham I*

#### a.      *Procedural Due Process*

First, the parties debate whether the proceedings were academic or disciplinary in nature. Under the standards articulated above, the Court has no trouble concluding that the punishment doled out to Pham was disciplinary. Pham received a failing grade and was placed on probation for

10

misconduct, not an inability to digest, understand, or implement academic material.

Although the Court could find no case directly on point (most cases deal with expulsions or suspensions), some type of notice and an opportunity to be heard were necessary before failing Pham and placing him on probation for the duration of his tenure with the university. Pham unquestionably received notice sufficient to allow him to defend himself against the charges. He was also provided the opportunity to be heard. Broadly, Pham's issues with the first proceeding stem from ULM's alleged deviation from its own rules and Dr. El Sayed's allegedly improper influence on the appeals process.

Pham asserts that Defendants engaged in the following conduct which deprived him of a liberty or property interest without due process of law:

- Violating Rule 11.11 by not providing Pham with written findings of fact or conclusions.

- Not introducing the actual ExamSoft records from the examination, but, rather, hearing testimony about those records from the professor who administered the exam.

- Not giving Pham notice of the ExamSoft records prior to the hearing, which violated Rules 7.01.02 and 10.02.

- Advising Pham to apologize for his misconduct during his appeals process which terminated his chances on appeal.

First, there is no constitutional right to receive written findings of fact and conclusions in the student discipline context. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641-42 (6th Cir. 2005) (citing *Jaska v. Regents of the Univ. of Mich.*, 597 F.Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986). While Defendants failed to comply with the Code, their failure to provide these findings was not unconstitutional.

Second, Pham complains that he had no prior notice that ExamSoft records would be used as evidence against him at the hearing. He also complains that Defendants never introduced the actual records; rather, Pate testified as to the substance of the records. However, the Court has found no case stating that a student in a disciplinary proceeding is entitled to have actual records introduced into evidence (as opposed to testimony describing those records). Moreover, although universities are encouraged to notify the student of the evidence to be used against them *prior* to the hearing, this is not constitutionally required, at least when the student attends the hearing and is able to question witnesses.[6] *See, e.g., Nash v. Auburn Univ.*, 812 F.2d 655, 663 (11th Cir. 1987); *Keough v. Tate Cty. Bd. of Educ.*, 748 F.2d 1077, 1082 (5th Cir. 1984); *see also Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 25 (D. Maine 2005) ("[D]ue process does not require students be given a list of exhibits before the hearing if the students attend the hearing.").

Third, Dr. El Sayed's advice to Pham–while ill-advised–was hardly unconstitutional. There was no evidence adduced at the hearing that Dr. El Sayed coerced Pham to confess to cheating. Pham's theory seems to be that the interaction was improper simply because Dr. El Sayed was one of the original accusers, thus, he must have been biased. However, bias in the constitutional sense will not be lightly inferred. For example, courts have held that bias will not be inferred in the school discipline context where the original accuser also decides guilt and what punishment is appropriate. *See Heyne*, 655 F.3d at 567. ("The impartiality demanded by due process does not preclude many common school disciplinary practices. For example, the Fifth and Seventh Circuits have concluded that due process is not necessarily violated where the school official who initiates, investigates, or

---

[6]There is no indication that Pham was prevented from questioning witnesses at the first hearing.

prosecutes charges against a student plays a role in the decision to suspend the student.") (citing *Lamb v. Panhandle Cty. Unit. Dist. No. 2*, 826 F.2d 526, 529-30 (7th Cir. 1987); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985)). Here, Pham had to introduce some evidence showing actual bias to raise a constitutional concern. He failed to accomplish that.

Last, to the extent that Pham argues that all of these incidents taken together demonstrate a fundamentally unfair proceeding, the Court again disagrees. After finding out about Dr. El Sayed's contact with Pham, ULM allowed Pham to retake the examination. While Pham remained on probation, the Court is convinced that ULM's actions in allowing Pham to retake the exam erase any concern that the proceedings were fundamentally unfair in the procedural due process sense.

### b.      Substantive Due Process

The substantive due process analysis asks whether Defendants' conduct was so arbitrary as to shock the conscience. That standard is not met here. While Defendants should have followed their own Code, and while Dr. El Sayed should not have offered Pham advice, these actions do not shock the conscience in the constitutional sense.[7]   This is especially true because Pham was allowed to retake the exam.

### 4.      Application to Pham II

After Pham I, Pham was again allegedly caught cheating, this time by Dr. Robinson. Pham alleges that the second proceeding was also constitutionally insufficient. Pham cites the following events and departures from the student code in support of his argument:

---

[7]*Dixon* provides an example of conduct which is so arbitrary that it violates a student's substantive due process rights. There, African-American students were expelled simply because they sought to purchase lunch at a publicly owned grill in the basement of the Montgomery, Alabama, county courthouse. *Dixon*, 294 F.2d at 152, n. 3.

13

- Robinson's initial charge, as well as the notice given to Pham, indicates that he was charged with the use of unauthorized materials in violation of Rule 3.01.01. However, Pani's final denial of appeal indicates that ULM expelled Pham for possessing unauthorized materials. Thus, Pham claims that he lacked notice that he may be expelled for possessing unauthorized materials.

- Pham asked the Ethics Board to consider his answer sheet in determining his guilt. However, the Ethics Board did not discuss it until its deliberations outside Pham's presence.

- Despite assurances from Dean Blaylock, Pham was not allowed to cross examine witnesses at the initial hearing.

- Pham was not provided with a copy of the findings of fact and conclusions from the initial hearing until his counsel complained, and he never received the findings of fact and conclusions from the supplemental hearing.

- Dean Blaylock did not properly consider Pham's appeal. He simply rubber-stamped the findings and recommendations of the Ethics Board.

- According to Pham, all of the above occurrences violated various portions of the University Code.

Pham has not clearly shown a substantial likelihood of success on this claim. With respect to the notice argument, the Court finds that Pham was sufficiently apprised of the charges against him. To be sufficient in the constitutional sense, the notice must allow the accused to mount a proper defense. *See Flaim*, 418 F.3d at 638 (citing *Jaska*, 597 F.Supp. at 1250, *aff'd* 787 F.2d 590). The Court has found no case directly on point in the student discipline case law; however, analogies can be drawn from other arenas. For example, in *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003), a prisoner was charged with smuggling tobacco into the facility with the help of a staff member. Prison officials charged the prisoner with conspiracy and bribery with a potential punishment of losing credit for good behavior. The Conduct Adjustment Board found him guilty. On appeal, the reviewing authority modified the charge to attempted trafficking. The prisoner argued that his due

14

process right to notice had been violated because the official charge was different from the charge in the original notice. The Seventh Circuit disagreed and found that, because the prisoner had notice of the facts underlying the charge, he was sufficiently notified that he could be subject to a trafficking charge. *See also Najjar v. Yusuff*, 81 Fed. App'x. 815, 816 (5th Cir. 2003) (finding no due process violation where notice to prisoner accused him of lying to staff yet the prisoner was convicted of attempted lying).  These cases bolster the Court's conclusion that Pham received adequate notice. The panoply of rights given to prisoners in such cases is at least as extensive as the rights given to students in disciplinary matters. (Compare *Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974) with  *Dixon*, 294 F.2d at 157).

In this case, Pham was clearly aware of the conduct which ULM believed constituted grounds for expulsion. Indeed, the notice sent to Pham indicated that he violated 3.01.01 which forbids the use and/or possession of unauthorized materials. Pham makes much of the fact that Pani's final letter referenced the *possession* of unauthorized materials even though Robinson's charge referred to the use of unauthorized materials. However, as a matter of logic, use includes possession. Moreover, Dr. Robinson's version of the facts was sent to Pham, so that he could prepare a counter affidavit. From the facts alleged by Dr. Robinson, Pham was put on notice that a potential charge of using and/or possessing unauthorized materials was possible.

Turning to the Ethics Board's consideration of Pham's answer sheet in its deliberations, the Court finds no constitutional error. Pham had knowledge of this evidence as he was the one who initially urged the Ethics Board to consider it. What is more, Defendants provided a second, abbreviated hearing at which Pham could have cross examined witnesses about the answer sheet and its relation to his case if he wished.

15

With respect to Dean Blaylock's consideration of Pham's appeal, the Court finds no error of a constitutional magnitude. Although it appears that Dean Blaylock considered the appeal without review of Pham's arguments, the error was harmless. Pani was the last stop in the appeals process. There is no dispute that Pani actually considered Pham's appeal.

Pham next appears to argue that, although the individual violations of the Code might not amount to violations of due process, the culmination of all the missteps in the second proceeding resulted in a process that was fundamentally unfair. The Court disagrees. Again, although ULM's process was not a model of consistency, Pham received adequate notice and a hearing. He also received a supplemental hearing so that Pham could cross examine witnesses–a formality not required by the constitution. Under these facts, Pham has failed to show that the second proceeding was so fundamentally unfair as to render it a violation of Pham's procedural due process rights.

### b.    Substantive Due Process

Pham does not specifically argue that Defendants' actions violated his substantive due process rights, but, in an abundance of caution, the Court also analyzes his claims under a substantive due process theory and finds no conduct so arbitrary that it "shock[s] the conscience." Expelling a student after a hearing, a supplemental hearing, and an appeals process is not the type of conduct which shocks the conscience as a matter of law.

### C.    Other Preliminary Injunction Factors

Pham devotes nearly all his briefing to the substantial likelihood of success on the merits issue. There are four factors courts consider in the preliminary injunction context. And because Pham is seeking a mandatory injunction to alter the status quo, he must convincingly meet his burden on each factor.

16

In addition to the substantial likelihood of success on the merits factor, the Court must consider whether Pham's injury–expulsion from ULM–amounts to a threat of irreparable harm. "A plaintiff seeking a preliminary, as opposed to a permanent injunction must show that the irreparable injury will occur 'during the pendency of the litigation' unless the preliminary injunction issues." *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 433 (S.D. Tex. 2008) (quoting *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990). In order for a harm to be considered irreparable for purposes of issuing a preliminary injunction, monetary damages must be inadequate to redress it. In this case, ULM had already expelled Pham at the time he brought this suit. Therefore, there is no threat of irreparable injury or reason to preserve the status quo because the status quo is not what is desired. This weighs against granting a preliminary injunction. *See Mountain Med. Equip., Inc. v. Healthdyne, Inc*., 582 F.Supp. 846, 848 (D. Colo. 1984) ("Harm that has already occurred cannot be remedied by an injunction.").

Second, Pham has introduced no argument or evidence concerning the remaining two preliminary injunction factors: (1) that the threatened injury outweighs any potential harm to the non-movant; and (2) that the injunction will not undermine the public interest. *See Valley v. Rapides Parish Sch. Bd.*, 18 F.3d 1047, 1051 (5th Cir. 1997). Pham's failure to carry the burden of persuasion on all four elements  precludes the requested relief. *See Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.,* 577 F.3d 250, 253 (5th Cir. 2009) ("We have cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements.") (quoting *Lake Charles Diesel Inc., v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003)).

In sum, because Pham has failed to convincingly demonstrate the propriety of injunctive

17

relief, the request for a preliminary injunction is DENIED.

### D.    Qualified Immunity[8]

Pham has sued multiple school officials in both their individual and official capacities. All Defendants seek a finding of qualified immunity with respect to the suits against them in their individual capacities.

Qualified immunity is a doctrine that strives to strike a balance between the rule of law and the exercise of personal liberties in a free society. In that sense, it affords officers with ample room to make "reasonable but mistaken judgments about open legal questions." *Rodriguez v. Bexar Cty. Hosp. Dist.*, 14-861, 2015 WL 77600209 at *21 (W.D. Tex. Nov. 30, 2015) (citations omitted). Importantly, once asserted by the defendant, the burden shifts to the plaintiff to show that the defense is inapplicable. *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

Courts employ a two step procedure to gauge the applicability of qualified immunity. These steps can be reviewed in any order, but the underlying inquiries are whether the plaintiff has alleged facts sufficient to state a constitutional violation and whether, at the time of the incident, the contours of the right were clearly established so that *every* reasonable officer would understand what he was doing violates that right. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 471 (5th Cir. 2014). On the other hand, the clearly established prong does not necessarily require a case "directly on point." *See Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting) *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Still, precedent must have placed the pertinent constitutional issue beyond

---

[8]Because Defendants raised the qualified immunity issue in a motion to dismiss, the Court has not considered any evidence adduced during the preliminary injunction hearing in ruling on the motion. *See Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979) (noting that court converts 12(b) motion into motion for summary judgment where considering evidence outside the pleadings).

debate. *Ashcroft*, 563 U.S. at 741. Indeed, the qualified immunity defense will protect all but the "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 340 (1986).

### 1.      *Dr. Jackson*

Pham has named Dr. Jackson as a Defendant in this matter. It appears that Pham only seeks damages against Dr. Jackson for his role as the Chair of the Ethics Board Committee in Pham I. However, there is no indication that Dr. Jackson had a vote in the initial proceedings. Assuming *arguendo*, there was some constitutional violation resulting from Pham I, Jackson cannot assume monetary responsibility unless he was personally involved in the constitutional deprivation or took a wrongful action which was casually connected to the constitutional deprivation. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F.Supp.3d 973, 1003 (S.D. Tex. 2014) (noting that, in order to state a claim against an official in his individual capacity, the plaintiff must allege personal involvement in the constitutional deprivation or a wrongful action which is causally connected to such deprivation). The facts, even when viewed in a light most favorable to Pham, do not bear that out. Dr. Jackson is entitled to qualified immunity.

### 2.      *Dr. El Sayed*

Dr. El Sayed is also entitled to qualified immunity. His only involvement in this suit stems from his alleged attempt to convince Pham to apologize for his conduct. Pham appears to argue that Dr. El Sayed's bias must be presumed because he was Pham's original accuser, and thus, any contact he had with Pham served to taint the proceedings. This is not so: courts have refused to find bias in cases in which a school officer acts as both the accuser and the judge of guilt. *See Heyne*, 655 F.3d at 567. Here, Dr. El Sayed's role as one of the original accusers does not serve to taint his subsequent

19

involvement in the proceedings. Pham fails to allege facts sufficient to make out a constitutional violation on the part of Dr. El Sayed. Dr El Sayed is entitled to qualified immunity.

### 3.    *Dr. Jacobs*

Dr. Jacobs served as the chair of the Ethics Board for Pham I. She had no vote in the guilt or punishment recommendation. She appears to be named because the Ethics Board failed to allow Pham the opportunity to cross examine witnesses, despite previous assurances from Dr. Cockerham. Pham also takes issue with the fact that evidence was considered outside his presence.

First, Pham has no constitutional right to cross examine witnesses in a school expulsion proceeding. *See Dixon*, 294 F.2d at 159. Nor does Pham point the Court to any authority indicating that a consideration of evidence outside the presence of the accused amounts to a constitutional violation in this context.

Second, assuming *arguendo* that either of these missteps amounted to a constitutional violation initially, the subsequent hearing alleviated any concerns. Dr. Jacobs is entitled to qualified immunity because Pham has not alleged facts showing that she committed or engaged in a constitutional violation.

### 4.    *Dr. Cockerham*

Dr. Cockerham's involvement in this case appeared to be limited to investigating reports of cheating and providing information on the hearing to all parties. He did not participate in or vote at either hearing. Pham's issue with Dr. Cockerham seems to stem from Dr. Cockerham advising Pham that he would be allowed to cross examine witnesses at the hearing. However, assuming, *arguendo*, that this violated Pham's right to due process, the error was corrected by the supplemental hearing. Accordingly, Pham's Complaint fails to make out a constitutional violation on the part of Dr.

20

Cockerham and he is entitled to qualified immunity.

### 5. *Dean Blaylock*

Dean Blaylock heard appeals in both Pham I and Pham II. The Complaint indicates that he essentially decided the appeals without considering any of Pham's arguments or evidence. While normally this would be problematic, Dean Blaylock was not the final arbiter. Thus, assuming *arguendo* that Dean Blaylock approached the appeal with the kind of closed mind that offends due process, Pani's review served to break the causal connection between the wrong and the injury. Nor does the Court find that Blaylock's actions, taking as true the allegations in Pham's complaint, were so arbitrary as to shock the conscience in the constitutional sense. Dean Blaylock is entitled to qualified immunity.

### 6. *Pani*

Pani was the final arbiter with respect to both Pham I and Pham II. The central complaint against Pani seems to be that he found Pham guilty of possessing unauthorized materials even though the charge referred to the use of unauthorized materials. Even when viewed in a light most favorable to Pham, these facts fail to make out a constitutional violation. Pham was apprised of the conduct which led to his expulsion. Moreover, the original charge stated that he violated Rule 3.01.01, which forbids both the use and possession of unauthorized material. Indeed, as a matter of logic, use of unauthorized materials encompasses their possession. Thus, the Court finds that Pham received sufficient notice. Pani is entitled to qualified immunity.

### 7. *Carradine*

Pham also named Carradine, ULM's in-house counsel, as a Defendant. However, the Complaint does not demonstrate how she caused any constitutional violation. Accordingly,

21

Carradine is entitled to qualified immunity because Pham fails to allege facts sufficient to show that Carradine committed a constitutional violation or took a wrongful action which caused a constitutional violation.

In sum, to the extent Defendants' motion to dismiss seeks qualified immunity for all named Defendants in their individual capacities, the motion is GRANTED. All claims for monetary damages against the named Defendants in their individual capacities are DISMISSED WITH PREJUDICE.

## III.   CONCLUSION

For the reasons set forth in this Ruling, Pham's Motion for a Preliminary Injunction is DENIED. Defendants' Motion to Dismiss on qualified immunity grounds is GRANTED, and all claims against Defendants in their individual capacities for monetary damages are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 13th day of July, 2016.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**